# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JAMES T. RICHARDSON, # Y-21562, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 17-cv-811-JPG |
| | ) | |
| WHITE COUNTY JAIL, | ) | |
| RANDY COBB, | ) | |
| OFFICER KALEENA, | ) | |
| DEPUTY McKENZIE, | ) | |
| and DEPUTY STOKES, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff, currently incarcerated at Graham Correctional Center ("Graham"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. His claims arose while he was detained at the White County Jail ("the Jail"). Plaintiff claims that Defendants were deliberately indifferent to his serious medical conditions, and that he was subjected to unconstitutional conditions of confinement. This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact."

1

*Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that some of Plaintiff's claims survive threshold review under § 1915A.

## **The Complaint**

Plaintiff was in custody at the White County Jail during April and May 2017, until he was transferred to Graham on May 10, 2017. (Doc. 1, pp. 6-11). When Plaintiff was booked into the Jail, he advised the booking officer that he takes anti-epileptic prescription medication (Gabapentin 800 mg, 4 times daily) to control seizures. (Doc. 1, p. 8). The officer said this

information would be relayed to the Jail's medical office. However, Plaintiff did not receive his seizure medication for the next 5 days. Plaintiff notes that he had previously been in custody in the White County Jail in 2015, and was prescribed the same 800 mg dosage of Gabapentin at that time. Medical Officer Kaleena was the medical officer during Plaintiff's 2015 custody, and was still in that position during Plaintiff's 2017 stay at the Jail. (Doc. 1, p. 12).

On the 5th day without medication, Plaintiff suffered a seizure that caused him to urinate on himself and on his bedding. He notified Jail staff (whom he does not identify by name), but they took an hour and a half to respond with clean clothes. Plaintiff still received no seizure medication and did not see a medical provider. Plaintiff submitted approximately 6 medical requests between April 21 and April 27, 2017, but never received a response. (Doc. 1, p. 8).

On the 8th day without medication, Plaintiff had another seizure while he was in cell #4. When he "came back" from this seizure, his cellmates warned him not to move, and Plaintiff immediately felt intense pain in his right hand. *Id.* Plaintiff notified Deputies McKenzie and Stokes that his hand appeared swollen, he was in intense pain, and the bone appeared to be broken. (Doc. 1, p. 6). McKenzie and Stokes took Plaintiff to a medical observation room, where Plaintiff told Medical Officer Kaleena about his hand injury and pain. (Doc. 1, p. 6). Kaleena gave him an 800 mg dose of Gabapentin, but gave him no medication for the pain. (Doc. 1, pp. 6, 9). Plaintiff tried to get her to treat his hand and asked to see a doctor, but Kaleena said, "Unless it's a life threatening emergency the Jail wasn't required to treat [him]." (Doc. 1, p. 9).

Plaintiff was then placed into a cell that contained nothing but a mat, and was contaminated with urine and feces on the toilet and floor. Plaintiff asked McKenzie and Stokes to have the cell cleaned, but they told him to lie down and shut up. Plaintiff asked another

officer for pain medication. That unidentified officer gave Plaintiff ice, but did not provide medication for the pain.

Plaintiff asked McKenzie and Stokes for a grievance. McKenzie responded, "We don't do grievances here." (Doc. 1, p. 10). When Plaintiff asked to speak to the jailer or sergeant, McKenzie told him, "If you don't want something worse than a broke[n] hand, you better lay the f**k down and shut up." *Id.* Plaintiff complied. Later, Plaintiff obtained a medical request form, which he submitted to seek treatment for his injured hand.

The next day, Plaintiff still had received no medication for the pain. Kaleena called him out of the cell and returned him to his previous cell (#4) in general population. She apologized for the events of the previous day and told him he was scheduled for his hand to be examined. (Doc. 1, p. 10). However, Plaintiff was never taken to see another medical provider, and he received no pain medication for his hand over the next 7 days. (Doc. 1, p. 11). He did receive his regular seizure medications during that time.

On the 8th day after his injury (May 10, 2017), Plaintiff was transferred to Graham, and he showed his injured hand to officials there. Graham officials prescribed ibuprofen and an ace bandage for Plaintiff, and an x-ray showed the hand was fractured. (Doc. 1, pp. 13-14). Plaintiff later saw an orthopedic specialist and learned that the bone had healed but was "crooked." (Doc. 1, p. 11). He claims that his hand is disfigured and will have to be re-broken so that it can be re-set. (Doc. 1, p. 6).

Plaintiff adds that during April 2017, Jailer Randy Cobb "disregarded" Plaintiff's health by smoking inside the Jail, with no ventilation other than an open door. (Doc. 1, p. 7). On several occasions, Plaintiff had to "walk through a cloud of smoke to move through the Jail." *Id.*

Plaintiff seeks monetary damages for his pain and suffering, and to cover future medical

bills stemming from the hand injury. (Doc. 1, p. 15).

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:** Medical Officer Kaleena was deliberately indifferent to Plaintiff's medical needs for his seizure disorder, by failing to give Plaintiff his prescribed anti-seizure medication for at least 8 days after Plaintiff entered the White County Jail;
>
> **Count 2:** Kaleena was deliberately indifferent to Plaintiff's serious hand injury, when she refused to treat Plaintiff's hand or provide him with any pain medication, and failed to refer him to a doctor or nurse for further examination of the injury;
>
> **Count 3:** McKenzie and Stokes were deliberately indifferent to Plaintiff's severe pain from his hand injury, when they failed to respond to Plaintiff's requests for pain medication after he was placed in the single cell;
>
> **Count 4:** McKenzie and Stokes housed Plaintiff under unconstitutional conditions when they failed to remedy the contamination with human waste in his single cell;
>
> **Count 5:** McKenzie and Stokes refused to allow Plaintiff to file a grievance;
>
> **Count 6:** Cobb exposed Plaintiff to second-hand smoke on several occasions in the Jail.

Counts 1, 2, 3, and 4 shall proceed for further consideration in this action. Counts 5 and 6 shall be dismissed for failure to state a claim upon which relief may be granted.

### Count 1 – Deliberate Indifference to Serious Medical Needs – Prescription Medication

It appears that for most of Plaintiff's confinement at the Jail, he was held as a pretrial

detainee while criminal charges against him were pending. However, at some point before May 10, 2017 (when Plaintiff was placed in the custody of the Illinois Department of Corrections and transferred to Graham to serve a sentence), his status changed to that of a convicted prisoner.

A pretrial detainee's claim for deliberate indifference to medical needs is considered under the Due Process Clause of the Fourteenth Amendment, while the Eighth Amendment's prohibition against cruel and unusual punishment governs a claim filed by a convicted prisoner. Under either standard, Plaintiff's deliberate indifference claims survive threshold review under § 1915A.

Detainees are entitled to the same sort of protection against deliberate indifference as convicted inmates have under the Eighth Amendment. *See Williams v. Romana*, 411 F. App'x 900, 901 n.1 (7th Cir. 2011); *Miller v. Hertz*, 420 F. App'x 629, 634 (7th Cir. 2011). To state a claim for deliberate indifference to medical needs, a detainee must show that (1) he suffered from an objectively serious condition which created a substantial risk of harm, and (2) the defendants were aware of that risk and intentionally disregarded it. *Minix v. Canarecci*, 597 F.3d 824, 831 (7th Cir. 2010); *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 764-65 (7th Cir. 2002). A medical need is "serious" for deliberate indifference purposes where it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997). "Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). However, evidence that a defendant acted negligently does not raise a claim for deliberate indifference. *Jackson*, 300 F.3d at 764-65.

Here, Plaintiff's seizure disorder is an objectively serious medical condition. He states that when he was booked into the Jail, he informed the booking officer of his need for his prescribed medication to control his seizures, and this request should have been conveyed to Medical Officer Kaleena. Moreover, Kaleena was made aware of Plaintiff's seizure disorder and prescription for Gabapentin when he was a prisoner at the Jail in 2015. At the time of Plaintiff's 2017 imprisonment, if Kaleena knew about Plaintiff's condition and his daily need for Gabapentin, yet failed to provide him with this medication during the earlier part of his imprisonment, she may have been deliberately indifferent to his serious medical condition. Interestingly, Kaleena gave Plaintiff his Gabapentin, apparently for the first time, when he sought help from her for his injured hand. He continued to receive this daily medication for the rest of his time at the Jail.

At this early stage of the litigation, Plaintiff may proceed with the deliberate indifference claim against Kaleena in **Count 1**.

### Count 2 – Deliberate Indifference – Hand Injury - Kaleena

Plaintiff suffered an objectively serious injury when he fractured his hand during a seizure. Despite his complaints of swelling and severe pain, Kaleena refused to treat the hand injury or refer Plaintiff to a doctor or nurse, because she concluded he did not have a "life threatening emergency." (Doc. 1, p. 9). She did not give Plaintiff any pain medication. When Plaintiff saw Kaleena for the second time on the day following his injury, she claimed that he was scheduled to be seen by another medical professional, but this did not happen. Again, she gave him no pain medication. As a result of Kaleena's inaction, Plaintiff continued to suffer from this untreated, painful fracture for approximately 8 days, until he was sent to Graham. These events support a claim against Kaleena for deliberate indifference to Plaintiff's broken

hand. Accordingly, the claim in **Count 2** shall also proceed for further review.

**Count 3 – Deliberate Indifference – Pain Medication – McKenzie & Stokes**

McKenzie and Stokes are not medical providers, but they still have a responsibility to respond appropriately to a prisoner's need for medical attention. At first, when Plaintiff sought help for his injured hand, they acted reasonably by taking him to Medical Officer Kaleena for assistance.

After Plaintiff was dismissed by Kaleena and was taken to the single cell, however, McKenzie and Stokes did nothing else to help Plaintiff get pain medication, despite their awareness of his broken hand. They ignored all of Plaintiff's requests for help, and threatened him with "something worse than a broke[n] hand" if he did not lie down and shut up. (Doc. 1, p. 10).

At this early stage of the case, the Complaint suggests that McKenzie and Stokes may have been deliberately indifferent to Plaintiff's need for pain medication for his broken hand after he was placed back in a cell. Plaintiff may therefore proceed with the claim in **Count 3**.

**Count 4 – Unsanitary Cell**

This claim also arises from Plaintiff's confinement in the single cell immediately after he was seen by Kaleena. Plaintiff discovered that the cell was contaminated with urine and feces on the toilet and on the floor. The cell was furnished only with a mat. Plaintiff asked McKenzie and Stokes to have the cell cleaned, but they refused to take any steps to correct the problem, and instead told Plaintiff to lie down and shut up.

A pretrial detainee's claims relating to unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment. *See Smith v. Dart*, 803 F.3d 304 (7th Cir. 2015); *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013); *Rice ex rel. Rice v. Corr.*

*Med. Servs.*, 675 F.3d 650, 664 (7th Cir. 2012); *Forest v. Prine*, 620 F.3d 739, 744-45 (7th Cir. 2010); *Klebanowski v. Sheahan*, 540 F.3d 633, 637 (7th Cir. 2008). As the Seventh Circuit explained:

> [A] pretrial detainee is entitled to be free from conditions that amount to "punishment," *Bell v. Wolfish*, 441 U.S. 520, 535 (1979), while a convicted prisoner is entitled to be free from conditions that constitute "cruel and unusual punishment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In both cases, however, the alleged conditions must be objectively serious enough to amount to a constitutional deprivation, and the defendant prison official must possess a sufficiently culpable state of mind.

*Smith*, 803 F.3d at 309.

The Seventh Circuit has historically applied the same standards to conditions claims arising under the Fourteenth Amendment (detainees) and Eighth Amendment (convicted prisoners). *See Smith*, 803 F.3d at 309-10; *Grieveson v. Anderson*, 538 F.3d 763, 771-72, 777-79 (7th Cir. 2008). For 'cruel and unusual punishment' claims brought by a detainee, the plaintiff must show that the jail officials knew that the plaintiff was at risk of serious harm, and that they disregarded that risk by failing to reasonably discharge the risk. *Grieveson v. Anderson*, 538 F.3d 763, 771-72, 777-79 (7th Cir. 2008). The objective element of such a claim requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer*, 511 U.S. at 834. The second, subjective element focuses on the defendant's culpable state of mind, which is deliberate indifference to a substantial risk of serious harm to the inmate from those conditions. *Farmer*, 511 U.S. at 837, 842. To satisfy this element, a plaintiff must show that "the defendant 'possess[ed] a purposeful, a knowing, or possibly a reckless state of mind' with respect to the defendant's actions (or inaction) toward the plaintiff." *Davis v. Wessel*, 792 F.3d 793, 801 (7th Cir. 2015) (quoting *Kingsley v. Hendrickson*, __U.S.__, 135 S. Ct. 2466, 2472 (2015)).

Here, Plaintiff claims that McKenzie and Stokes kept him in the cell where he was exposed to contamination with human feces and urine, and refused to take any steps to have the cell cleaned or possibly to move Plaintiff to another location. It appears that Plaintiff may have remained in the cell for approximately 24 hours, until Kaleena sent him back to general population sometime during the following day. Further factual development will be necessary in order to determine whether these events rose to the level of a constitutional violation. Therefore, Plaintiff's claim against McKenzie and Stokes in **Count 4** based on the unsanitary cell conditions shall receive further consideration.

### Dismissal of Count 5 – Grievance Procedure

Plaintiff claims that while he was in the dirty cell described in Count 4, McKenzie and Stokes denied his request to file a grievance, claiming, "We don't do grievances here," and threatening Plaintiff with harm. (Doc. 1, p. 10). While the Court does not condone this response, denying a prisoner the opportunity to file a grievance over his conditions of confinement does not violate the Constitution.

Plaintiff's efforts to exhaust his administrative remedies by filing a grievance with Jail officials may be relevant in the event that a Defendant raises a challenge to Plaintiff's ability to maintain a § 1983 suit over the substantive matters raised in the grievances. *See* 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). Nonetheless, a Defendant's action or inaction in handling a grievance or a request to file one does not support an independent constitutional claim. "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). The Constitution requires no procedure at all, and the failure of prison or jail officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v.*

*Headley*, 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982). Similarly, if the Jail did not have a grievance procedure available, as McKenzie claimed, that omission does not amount to a constitutional violation.

For these reasons, Plaintiff's claim in **Count 5** based on his thwarted attempt to file a grievance shall be dismissed from the action with prejudice.

### Dismissal of Count 6 – Second-Hand Smoke

The standard outlined in Count 4 above also applies to this claim for unconstitutional conditions of confinement. For Plaintiff to prevail against Cobb based on the exposure to second-hand smoke, Plaintiff must show that the conditions created an excessive risk to Plaintiff's health, and that Cobb was aware of the risk yet failed to correct the problem. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Grieveson v. Anderson*, 538 F.3d 763, 771-72, 777-79 (7th Cir. 2008).

The Supreme Court has held that a convicted prisoner "states a cause of action under the Eighth Amendment by alleging that [defendants] have, with deliberate indifference, exposed him to levels of ETS [environmental tobacco smoke] that pose an unreasonable risk of serious damage to his future health." *Helling v. McKinney*, 509 U.S. 25, 35 (1993); *see also Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001). Exposure to second-hand smoke can give rise to two types of claims – one for present injury and one for future injury. To state a claim based on present injury, an inmate must allege that prison officials knew of and disregarded "serious existing health problems" caused by the second-hand smoke. *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999). If the inmate has a serious respiratory condition that low levels of second-hand smoke may aggravate, the prison must provide a non-smoking environment. *See Powers v. Snyder*, 484 F.3d 929, 932 (7th Cir. 2007); *Alvarado*, 267 F.3d at 653.

To state a claim based on future injury, an inmate must allege that prison officials knew of and disregarded exposure to levels of second-hand smoke that "pose an unreasonable risk of serious damage to his future health." *Helling*, 509 U.S. at 35; *see Alvarado*, 267 F.3d at 651.

In Plaintiff's case, he may have an actionable claim against Cobb. However, the Complaint does not indicate how often or for how long Plaintiff was exposed to second-hand smoke. Plaintiff encountered "a cloud of smoke" on "several occasions" during April 2017 while he walked through the Jail. (Doc. 1, p. 7). This ambiguous statement could indicate merely a momentary exposure while walking past an office, or may suggest a longer-term condition. Based on this brief allegation, the Court cannot conclude that Plaintiff was exposed to smoke with a frequency or duration that posed an unreasonable risk to his health. Furthermore, the Complaint does not state whether Plaintiff ever notified Cobb of his concern, such that Cobb's failure to mitigate the problem would amount to deliberate indifference to a known risk. For these reasons, **Count 6** against Cobb shall be dismissed without prejudice.

Plaintiff is **ADVISED** that if he seeks to revive this claim in this action through filing an amended complaint, the claim in Count 6 may be subject to severance into a separate action, where another filing fee shall be assessed. *See George v. Smith*, 507 F.3d 605 (7th Cir. 2007) (unrelated claims against different defendants belong in separate lawsuits).

### Dismissal of Defendant White County Jail

In addition to the individual adverse parties, Plaintiff names the White County Jail as a Defendant. In order to obtain relief against a municipality such as the Jail, a plaintiff must allege that the constitutional deprivations were the result of an official policy, custom, or practice of the municipality. *Monell v. Dept. of Soc. Servs*., 436 U.S. 658, 691 (1978); *see also Pourghoraishi v. Flying J, Inc*., 449 F.3d 751, 765 (7th Cir. 2006). Plaintiff includes no such allegations in the

Complaint, and none of his claims indicate that any individual Defendant acted or failed to act because of an official policy, custom, or practice promulgated by the Jail.

Furthermore, merely invoking the name of a potential defendant is not sufficient to state a claim against that individual or entity. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption.").

For these reasons, the White County Jail shall be dismissed without prejudice as a party to this action.

### Pending Motion

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to the United States Magistrate Judge for further consideration.

### Disposition

**COUNT 5** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.

**COUNT 6** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

Defendants **WHITE COUNTY JAIL** and **COBB** are **DISMISSED** from this action without prejudice.

The Clerk of Court shall prepare for Defendants **KALEENA, McKENZIE,** and **STOKES**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of

Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not

independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

    **IT IS SO ORDERED.**

    **DATED: September 20, 2017**

    *s/J. Phil Gilbert*
    United States District Judge